**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LEE BURRELL,** | § | |
| *Plaintiff* | § | |
| | § | **Civil Action No.3:20 cv 478** |
| **v.** | § | |
| | § | **Complaint for Accommodation** |
| | § | |
| **OAK CLIFF BIBLE FELLOWSHIP** | § | **Discrimination Under the A.D.A.** |
| | § | |
| *Defendant* | § | **JURY TRIAL** |
| | § | |

## ORIGINAL COMPLAINT, DEMAND FOR JURY TRIAL

1.    Plaintiff, Lee Burrell, brings this action pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  This Complaint seeks redress for past and continuing discrimination against persons with disabilities and to bring the premises into compliance with Federal law including the ADAAG[1].  This discrimination is occurring at a public accommodation in Dallas, Texas that is a commercial property shopping center with multiple retail businesses located on it, including a Family Dollar and a Subway restaurant. It is located on Camp Wisdom Road and Polk.  Plaintiff brings this civil rights claim against the Defendant because Plaintiff by reason of his disability, is being excluded from participation in or being denied the benefits of the services, programs, or activities of and being subjected to discrimination by the Defendant at this property and its public accommodations.

2.    Plaintiff seeks to enjoin the Defendant from maintaining and to require that the Defendant remove the architectural barriers that interfere with Plaintiff's right to the full and

---

[1] Federal ADA Guidelines for Buildings and Facilities, 28 C.F.R. Part 36, Appendix A, (the "ADAAG").

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at the Defendant' Property.

3.      Plaintiff also seeks a permanent injunction to prevent the Defendant from engaging in these unlawful practices, as well as declaratory relief, and damages for the violation of Plaintiff's civil rights, along with attorney's fees and costs of litigation.

## JURISDICTION

4.      This Court has jurisdiction over the federal claims brought in this action under 28 U.S.C. §1331 and 42 U.S.C. §12188.

## PARTIES

5.      Plaintiff Lee Burrell is an individual with a disability within the meaning of the ADA Sec. 3(2)(A), 42 U.S.C. 12102(2)(A).   He is mobility impaired and uses a wheelchair for mobility.

6.      Defendant OAK CLIFF BIBLE FELLOWSHIP is a Texas non-profit corporation doing business in Texas.  Defendant OAK CLIFF BIBLE FELLOWSHIP owns the real property. OAK CLIFF BIBLE FELLOWSHIP purchased the Property in 2007.   OAK CLIFF BIBLE FELLOWSHIP lists its registered agent as Anthony T. Evans located at 1808 Camp Wisdom Road, Dallas, Texas 75232 and this agent may be served there.   OAK CLIFF BIBLE FELLOWSHIP is herein referred to going forward as "Defendant" or "Landlord".

7.     The Property is a commercial property located generally on Camp Wisdom at Polk in Dallas, Texas.  The Property was built in the early 1960's.  The Property is more particularly described in Dallas County records as POLK VILLAGE SHOPPING CENTER BLK 1/6917 TR 1, (the "Property").  The Property has a value of approximately one and a half million dollars ($1,500,000.00). The Defendant purchased the Property more than 10 years ago.

## BACKGROUND OF LEGAL CLAIMS

8.     More than 25 years ago Congress determined that disabled people, such as the Plaintiff and the Proposed Class, were suffering discrimination.  Specifically, Congress found *inter alia* the following:

  (a)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

  (b)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

  (c)     the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

  (d)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity."[2]

---

[2] 42 U.S.C. 12101(a) Only portions are set out in full so lettering does not match statute.

9.      As a result of these findings, the Congress passed the Americans with Disabilities Act

(the "ADA"), 42 U.S.C. Sec. 12101 *et seq.*  That act forms the basis for this action.  The ADA

was designed to do several things, specifically among other things:

    (a)      to provide a clear and comprehensive national mandate for the elimination
of discrimination against individuals with disabilities;

    (b)      to provide clear, strong, consistent, enforceable standards addressing
discrimination against individuals with disabilities;

    (c)      to ensure that the Federal Government plays a central role in enforcing the
standards established in this chapter on behalf of individuals with
disabilities; and

    (d)      to invoke the sweep of congressional authority, including the power to
enforce the fourteenth amendment and to regulate commerce, in order to
address the major areas of discrimination faced day-to-day by people with
disabilities."[3]

10.      In an effort to prevent discrimination against persons with disabilities, Texas passed the

Texas Architectural Barrier Act[4] (the "TABA").  The intent of the TABA was to make all

buildings and facilities covered by that article accessible to and functional for, persons with

disabilities to, through, and within their doors.  The TABA states, "The provisions of this article

are to further the policy of the State of Texas to encourage and promote the rehabilitation of

persons with disabilities and to eliminate, insofar as possible, unnecessary barriers encountered

by persons with disabilities, whose ability to engage in gainful occupations or to achieve

maximum personal independence is needlessly restricted."[5]

---

[3]42 U.S.C. 12101(b).

[4] Tex. Civ. Stat. Art. 9102 Sec. 3(b). The TABA was later incorporated into the Tex Gov Code chapter 469.

[5] Tex. Civ. Stat. Art. 9102 Sec. 1.

*PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL*
**Page 4 of 22**

11.     The Texas Human Resource Code (the "THRC") prohibits discrimination against disabled individuals to wit, "Persons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state." Tex Hum Res. Code 121.003 makes a failure to comply with Chapter 469 of the Government Code or to make reasonable accommodations in policies, practices and procedures an act of discrimination.

12.     So both Federal and State laws impose obligations on commercial property owners regarding the disabled.

13.     As a result of Mr. Burrell's disability, using many public accommodations is already difficult even when architectural barriers have been removed.  By failing to comply with the law and by owning or operating non-complying public accommodation, the Defendant continues the discriminatory effects that the laws sought to reform.

14.     Under the ADA, both the landlord who owns the building and the tenants who own or operate the places of public accommodation are liable for the violations of the ADA alleged herein.  As between those parties, allocation of responsibility for complying with the obligations of the ADA may be determined by lease or other contract.  36 C.F.R. 201 (b).

15.     Congress provided that the primary enforcement mechanism for the ADA would be private citizens. The State of Texas provided that private citizens have the right to file suit in a court of competent jurisdiction to seek recovery for damages. Thus, private citizens have been given the right to file suit to enforce these civil rights laws to assure access to the public accommodations in Texas.  There are simply too many pieces of property for these government agencies to single handedly bring into compliance.

16.     The Property is completely under the control of the Defendant.  The Plaintiff has no control of the Property or the fact that he is disabled.  The existence and requirements of 25 year old laws can come as no surprise to any entity owning or operating commercial property.

## PRE-SUIT NOTICE WAS PROVIDED

17.     Counsel for the Plaintiff provided notice and an opportunity for Defendant to resolve this matter. A letter was sent to the Defendant's agent for service, and to the address on file with the taxing agency for the county more than a year ago. A lawyer contacted my office and attempts were made to resolve this matter. The final letter to the Defendant's lawyer has not been responded to at all. As a result, this suit has been filed and the Defendant is free to assert whatever defenses it claims to have.

18.     At any time prior to receiving the letter and Complaint from the Plaintiff the Defendant could have modified the Property to come into compliance with the more than 25 year old laws and avoided this suit. But the Defendant did not. What the Defendant chose to do instead was to buy, own and operate improperly modified Property in direct violation of Federal law and to thereby discriminate against the Plaintiff.

19.     Plaintiff is now exercising his rights granted by Congress to enforce the laws to stop the discrimination the Defendant has caused.

## FACTS

20.     The Property is a fairly typical retail center built in the early 1960's. It is located in a low income area.  It has its own parking and the public accommodations within the Property are accessed by walkways connecting the parking and the Property.

21.     Plaintiff uses a wheelchair for mobility.  Mr. Burrell lives in Dallas not too far from the Property and like many people in likes to grab a sandwich or stop into the Family Dollar occasionally.  A few weeks before the original letter was sent, Mr. Burrell pulled in to get a Subway sandwich.  However, when he arrived at the Property it was apparent that the accessible parking didn't have an access aisle or curb cut or even a sign. But the spot had been recently "marked" on the pavement as accessible parking for the Property.  A picture of the accessible parking space is found below.



22.     He then drove to find another spot to see if it was better.  It was not. The spot is pictured below.



23.     Once again the parking space does not have an access aisle.  The spot does not have a

curb cut for access. The spot is not on an accessible route to any of the public accommodations at

the Property. The spot does not have a sign. But the spot has been clearly marked as the

accessible parking for the Property.

24.     Below is a picture of another set of "accessible parking spaces" at the Property.



25.     The spaces pictured above have signs and an access aisle, but there is no curb cut.

26.     The Property is in a low income area and many people ride public transportation in the area.  There is a DART stop less than 500 feet from the Property on Polk.  There is, however, no accessible route from the sidewalk to any of the public accommodations on the Property.  The view of the DART stop from the Property is pictured below.



27.     Mr. Burrell, like any disabled person, has encountered these types of barriers countless times over the years.  In this case it is a large million dollar property that "provides" accessible parking that doesn't even have access aisles or a curb cut.  Disappointed and frustrated at the situation, he left. The law does not require that any plaintiff engage in a futile act or patronize businesses so blatantly in violation of the law designed to allow Mr. Burrell to access the facility just like the able bodied.  Unfortunately barriers like this exist all over DFW even 25 years after this law was passed.

28.    This Property has multiple different businesses on it and the access to all of them is dependent upon the parking or route in from the sidewalk.  Neither the parking nor the access from the sidewalk is accessible.

> 4.3.2 Location.
>
> (1) At least one accessible route within the boundary of the site shall be provided from public transportation stops, accessible parking, and accessible passenger loading zones, and public streets or sidewalks to the accessible building entrance they serve. The accessible route shall, to the maximum extent feasible, coincide with the route for the general public.
>
> (2) At least one accessible route shall connect accessible buildings, facilities, elements, and spaces that are on the same site.

29.    This million dollar plus piece of Property was purchased approximately10 years ago by the Defendant.  The Defendant is a non-profit church based organization that has decided to go into the commercial property leasing business for million dollar property.  But this non-profit operating in a low income area has not even bothered to provide basic access to the Property for the disabled who live in the area.

30.    The undeniable reality is that more than 25 years after the ADA was passed this Property is operating with open and obvious barriers to the disabled public.  Unfortunately, this is just one example of the sorry state of compliance in the DFW area.

31.    After discovery when a full review has been conducted, a complete list of the barriers at the Property will be provided to the Defendant.  The listing in this Complaint is merely intended to provide the Defendant with information sufficient to conform to the notice pleading requirements and to show facts sufficient to prove liability.

32.     The types of architectural barriers that exist at the Property are precisely what the ADA was designed to eliminate.

33.     The Plaintiff was discriminated against when he attempted to visit the Property when he encountered the architectural barriers at the Property. The Plaintiff would like to be able to visit the Property and would return to the Property if it were made compliant so that he could park and get into the businesses like an able bodied person can. The access inside the public accommodations at the Property is unknown at this time because the Defendant has not provided access to the front doors of the businesses. But the access will be reviewed for compliance during discovery.

34.     The Plaintiff will encounter architectural barriers any time they attempt to visit the Property. The Defendant by failing to remove the architectural barriers discourages the Plaintiff from attempting to use the Property and from enjoying the Property in the same way that the able bodied can.  By failing to remove the barriers the Defendant discriminates against the Plaintiff and the mobility impaired individuals who would like to visit the Property.

35.     As a result of the Defendant's conduct and in order to pursue this matter Plaintiff has retained counsel with more than 30 years of experience, including having been appointed class counsel on several occasions to represent mobility impaired individuals of Texas.  The Plaintiff has agreed to pay his attorney a reasonable fee.  Pursuant to his statutory rights, Plaintiff will seek to recover his fees and any costs in this litigation from the Defendant if he is the prevailing party in this case.

36.     ADA Title III cases are civil rights cases.  The discrimination, in general, is the existence of architectural barriers at the properties. The ADA was designed to eliminate those

discriminatory barriers <u>over time</u>.   The laws require that new locations be designed and constructed in full compliance, and they require that all modifications to existing locations also be made in full compliance.[6]  The laws are structured so that over time, gradually, all properties will be or become compliant to the maximum extent feasible.

37.     It has now been more than 25 years since passage of those laws and compliance has simply not occurred as expected because new construction and modifications are regularly not made in compliance, owners have not voluntarily made readily achievable modifications as the law requires, and, <u>so long as this situation exists and  so long as property is purchased and or operated without regard to compliance, compliance will never be achieved</u>.   When non-compliant modifications are built into a property and when property is purchased without regard to compliance a significant purpose of the law is thwarted because this <u>prevents</u> gradual compliance.

38.     For more than 19 years now counsel for the Plaintiff, has represented disabled individuals on ADA Title III barrier cases. During that time it has become abundantly clear that  ADA Title III cases are considered nothing but a nuisance by the vast majority of commercial property owners.  There are no money damages available for violation.

39.     Thus the only "damages" an owner faces in an ADA case, above and beyond the costs to "fix", are the potential attorney's fees.  So property owners are just not concerned about getting caught out of compliance because there is no real consequence.  Even in the rare occasion where an owner is caught and sued, the downside amounts to nothing more than doing <u>what they should</u>

---

[6] The ADA also imposes an affirmative obligation to make readily achievable modifications to the property.

have already done years ago and possibly paying a "nuisance" attorney fee in addition to resolve the case.[7] In other words, it's just the cost of doing business if you're caught.

40.     As a result of this situation, commercial property owners have not been motivated over the past 25 years to come into compliance or to be sure whatever modifications they do make are made in compliance, or to make sure that when they buy property that it is compliant and/or that modifications are or were made in compliance.  A quick drive around the Metroplex to view the general state of compliance in older properties, newer properties, and in the modifications that have been made to both types of properties is enough to show any objective person that the laws are almost universally ignored, misunderstood, or given nothing but lip service.  The objective state of compliance that exists, now 25 years later, is strong evidence that the purpose of both the federal and State laws has been substantially thwarted.

41.     The Property involved in this case is a perfect example. It is a good sized piece of commercial property built in the 1960's.  This church based non-profit has owned this Property for more than 10 years.  The operators and managers should be aware of the numerous disabled people who live in the area since the church is nearby. But yet, the Defendant has chosen to buy and operate a strip center without providing any compliant accessible parking at all. It chose to operate the Property without any accessible route from the sidewalk into the businesses on the Property.

---

[7] Further, the court is well aware that ADA Title III cases are regularly referred to as "drive by litigation" and the people bringing the cases along with their counsel are subtly smeared as somehow unscrupulous.  This situation tends to further decrease compliance. Additionally, this kind of "press" seriously dissuades disabled individuals from raising issues of discrimination lest they be cast as "litigious trouble makers".  This situation in turn prevents any real awareness of how widespread the noncompliance and discrimination still actually is.

42.     Any attempt to come into compliance with the ADA begins with having the Property assessed.  And any basic ADA inspection would turn up the existence of the types of barriers that have been shown in this Complaint. Any reasonable due diligence regarding ADA compliance would have also found that the newly painted handicapped spaces were not compliant.  And when modifications are made they are not subject to the readily achievable standard, they must comply with the ADA.

43.     Yet this Property continues to operate with open and obvious barriers.  So either the Defendant has never bothered to have the Property inspected for compliance or the Defendant has simply ignored any findings of such an inspection.  Either way, it is clear that the policies, practices and procedures of the Defendant have not been modified to try to avoid discrimination. The Defendant has owned and operated the Property in this non-compliant state for years. Such a set of facts shows without a doubt that the Defendant has not modified its policy, practice and procedure to prevent discrimination at property it owns.

44.     Further, when notified by letter from counsel of the issues at the location before this suit was filed, the Defendant ultimately just stopped responding to the Plaintiff's counsel. This Property has operated out of compliance discriminating against individuals for years. Yet nothing will change until suit is filed. It cannot be any clearer, there is no concern about being caught out of compliance.

45.     This is hardly the only property in DFW, or even within a quarter mile of it, that is out of compliance.  It has been 25 years. Enough is enough. Property owners need to come into compliance.

## CAUSES OF ACTION
### Count 1
### ADA - Failure to Accommodate When Removal was Readily Achievable

46.     The law states that "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation *by any person who owns, leases (or leases to), or operates a place of public accommodation"*. 42 U.S.C. §12182(a) (italics added). The Property is a public accommodation.

47.     A facility means all *or any portion of buildings*, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located. 28 C.F.R. part 36.104 Definitions (italics added).

48.     The ADA places an ongoing obligation on all public accommodations to remove architectural barriers from existing facilities and public accommodations if that removal is readily achievable by defining discrimination in part as, a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities. 42 U.S.C. §12182(a)(iv).

49.     Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable factors to be considered include:

(1)     The nature and cost of the action needed under this part;

(2)     The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site; 28 C.F.R. part 36.104 Definitions

50.     The Justice Department has set out the priorities for barrier removal.  Specifically, the Justice Department has determined as follows:

(c) *Priorities*. A public accommodation is urged to take measures to comply with the barrier removal requirements of this section in accordance with the following order of priorities.

(1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp, widening entrances, and providing accessible parking spaces.  28 C.F.R. part 36.304(c) (emphasis added)

51.     The Property in this case is worth more than a million dollars. Yet it does not have any accessible parking that even provides a curb cut.  It does not have an accessible route from any parking to the front door of any of the businesses.  It does not have an accessible route from any of the businesses to the sidewalk or the public transportation.  More than 25 years after this law went into effect this Property is operating with the exact same types of barriers that would have had existed before the law was passed and which the law was intended to remove.   The Defendant has failed to remove the barriers that are the most basic priority in order to provide access to the facility.

52.     The Defendant, like the owners or operators of all public accommodations, has known or should have known about the obligation to make alterations to provide access into the Property.

It has been readily achievable for the Defendant to have removed some, one, or more of the architectural barriers that exist at the Property.  The Defendant has failed to remove some, one, or more of the architectural barriers at the Property that were readily achievable to remove.

53.     When a piece of commercial property is worth more than a million dollars, and still does not even have accessible parking or access to the sidewalk, it is clear that the law is simply ignored. If the law does not require that proper accessible parking and an accessible route to the front door of the businesses be provided after 25 years at a property worth more than a million dollars, then it is difficult to see what access the law does require be provided.

54.     The Defendant discriminates against Plaintiff  on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that the Defendant does not afford to Plaintiff the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Property as required by law because the Defendant has failed to remove those barriers where the removal was readily achievable.

55.     As a direct and proximate result of the Defendant's failure to remove barriers when removal was readily achievable the Defendant has discriminated against the Plaintiff.

### Count 2
### ADA - Improper Alterations

The ADA in section 12183 defines a form of discrimination under section 12182 as:

> (2) with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. Where the entity is undertaking an alteration that affects or

could affect usability of or access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General).

56.     Additionally, 36 C.F.R. 406 provides that, "(a) New construction and alterations subject to this part shall comply with the standards for accessible design published as appendix A to this part (ADAAG)." (emphasis added) As such the law requires that alterations be built in compliance with the ADAAG new construction standards.

57.     Clearly access into the Property "affect or could affect the usability of the building or facility or any part thereof."   The accessible parking shown in the "Facts" portion of this Complaint make it clear that the Defendant painted the parking to direct people to it as "accessible" and then did not bother to make the spots accessible. When you direct people into the parking space by painting it, you have modified the parking.  Further, a property like this has numerous retail locations on it that have been modified.  Modifications have clearly been made to the Property in the last 25 years and they do not all comply as required. The Defendant is responsible for owning and operating a public accommodation with non compliant modifications.

58.     Further, the Plaintiff cannot know, until discovery is conducted, exactly which other modifications are "new" and which are not because the law is now 25 years old. Neither a Plaintiff nor its counsel is free to do a full inspection of the interiors of a property before filing suit.  The items set out in this Complaint show modifications that are clear violations for liability.

The practical reality is that many modifications may appear old but may in fact be technically new modifications but until proper discovery can be conducted they cannot be known. And, because the Defendant prevents access to businesses by failing to even provide curb cuts, the Defendant has prevented the Plaintiff from being able to know all of the conditions.  The pleading contained herein is made simply to put the Defendant on notice as required under the rules as to open and obvious modifications which do not comply.

59.     When modifications affecting the usability of the Property are designed and constructed after the requirements of the ADA went into effect the modifications must comply with the ADAAG for new construction.

60.     The Defendant discriminates against Plaintiff on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, the Defendant does not afford to Plaintiff the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Property as required by law because it owns and operates a facility and public accommodation where there are alterations or modifications made after January 26, 1992 that are not accessible to the maximum extent feasible.

61.     As a direct and proximate result of the Defendant owning a public accommodation that has modifications that have not been made in compliance with the law the Defendant has discriminated against the Plaintiff.

**Count 3**
**Failure to Implement Policies, Practices and Procedures to**
**Prevent Discrimination under the ADA**

62.    The Property has several open and obvious architectural barriers including those listed in the facts section of this Complaint.  Any attempt to do the most basic due diligence regarding ADA compliance would discover the barriers.  Further, owning and operating a piece of Property without compliant parking and access in from that parking and or operating a piece of property with no accessible route to public transportation is clear evidence that there is no policy, practice and procedure in place to avoid discrimination at the Property.

63.    One form of discrimination defined by the ADA in 42 U.S.C. §12182(a)(ii) is,

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

64.    The Defendant either purchased the Property with full knowledge of the non compliant conditions on the Property or didn't bother to do any due diligence before purchasing to find out if the Property was compliant.  Either the Defendant has policies and procedures in place to be sure the property it buys, owns and operates is compliant or it does not. If it has policies, practices and procedures, then those policies discriminate against the disabled or they are being ignored.

65.    Alternatively, when the Defendant remarked the "accessible parking" it modified the Property. The Defendant was on notice when it made such modifications to be sure the parking being marked was compliant. But it did not.  So the Defendant's policies, practices and procedures simply do not prevent discrimination or they are being ignored.

66.    The Defendant discriminates against Plaintiff on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, the Defendant does not afford to Plaintiff the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available at the Property as required by law because the Defendant has failed to make reasonable modifications to its policies, practices and procedures to afford such goods, services, facilities, privileges, advantages, or accommodations it offers to individuals with disabilities.

67.    As a direct and proximate result of the Defendant's failure to modify its policies practices and procedures the Defendant has discriminated against the Plaintiff.

## REQUEST FOR RELIEF

*Wherefore* Plaintiff respectfully requests that the Court grant the following relief:

68.    An order directing Defendant to bring any modifications that are new construction at the Property into full compliance with Federal law.

69.    An order to remove the architectural barriers that are readily achievable to remove.

70.    An award to Plaintiff for attorney's fees, including litigation expenses, and costs.

71.    An award to Plaintiff for all other relief at law and in equity for which the Court deems appropriate.


Respectfully submitted February 25, 2020, by,


*/s/ Palmer D. Bailey*
Mr. Palmer D. Bailey
Bar Card No. 01533400


*PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL*
**Page 21 of 22**

Law Office of Palmer Bailey
1400 Preston Road, Suite 400
Plano, TX 75093
Tel.  972.560.4095
Fax. 972.560.4096
pdbaileyesq@gmail.com

**Attorney for Plaintiff**


*Plaintiff demands a trial by jury.*